**FERRO UNION CORPORATION**

**v.**

**SS IONIC COAST, Her Engines, Tackle, etc., and Australine Shipping Co., Inc., Her Owners and Nereid Compania Maritima, S. A., Her Owners, and/or Operators.**

**Civ. A. No. 67-H-662.**

United States District Court
S. D. Texas,
Houston Division.

Aug. 30, 1967.

Thomas A. Brown, of Stillwell & Brown, Houston, Tex., for plaintiff.

George W. Renaudin, of Royston, Rayzor & Cook, Houston, Tex., for defendants.

Memorandum and Order.

SINGLETON, District Judge.

On August 26, 1967, plaintiff filed its complaint against defendant shipowners and the vessel SS IONIC COAST. In its complaint, plaintiff alleges that pursuant to a charter party agreement between it and the defendant owners, the defendants were to ship 75 long tons of steel aboard the SS IONIC COAST for delivery to plaintiff at the Port of Houston. Plaintiff alleges that the charter party agreement was breached because the steel was damaged in transit and was delivered in such condition.

On the same day on which plaintiff filed its complaint, it filed notice of intent to take depositions aboard the SS IONIC COAST at Houston, Texas, on August 29, 1967, at 10:00 o'clock A.M. It also filed a motion for discovery and production and inspection pursuant to Fed.R.Civ.P. 34 (1967), and a motion requesting the issuance of a subpoena duces tecum relating to various ship logs and other documents aboard the SS IONIC COAST. On August 28, defendants filed (1) a motion to quash and/or vacate the notice of taking depositions, (2) a motion in opposition to the request for a subpoena duces tecum, (3) a motion in opposition to plaintiff's motion for discovery and production, and (4) a motion to stay all discovery proceedings. Since the SS IONIC COAST had arrived in Houston on August 28 and was scheduled to depart from the port after com-

pletion of an anticipated four-day unloading operation, the Court granted counsel's request for a hearing on defendants' motions at a time before the date set for the taking of the depositions and inspection. The hearing was held in chambers in the late afternoon of August 28, 1967.

The charter party agreement between the parties contains a clause providing for arbitration of disputes arising out of the charter party and provides that all necessary arbitration is to be conducted in New York City, New York. At the hearing in chambers, counsel for both parties advised the Court that the SS · IONIC COAST would remain in the Port of Houston for approximately four days while the unloading operations took place. Counsel further informed the Court that the ship was a foreign-flag vessel, primarily manned by Greek seamen; that plaintiff's cause of action was based on alleged mishandling and/or improper storage of the steel which caused it to be damaged during the sea voyage; that destination of the alleged damaged steel was Houston, Texas; and that the steel would be unloaded while the ship was docked at the Port of Houston at the present time.

Defendants' contention that the Court should refuse to allow plaintiff to commence and proceed with discovery procedures is based on Section 3 of the United States Arbitration Act. Section 3 provides:

"If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the *trial of the action* until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for

the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3 (1966).

It is the position of counsel for defendants that Section 3 applies to court-sanctioned discovery proceedings and thus upon a proper application by a party to an agreement subject to arbitration a court must deny all discovery. As a general rule, this contention is sound, the reason being well stated in Commercial Solvents Corp. v. Louisiana Liquid Fertilizer Co., Inc., 20 F.R.D. 359 (S.D.N.Y. 1957).

"By voluntarily becoming a party to a contract in which arbitration was the agreed mode for settling disputes thereunder respondent chose to avail itself of procedures peculiar to the arbitral process rather than those used in judicial determinations. 'A main object of a voluntary submission to arbitration is the avoidance of formal and technical preparation of a case for the usual procedure of a judicial trial.'" Id. at 361.

The statement in the *Commercial Solvents* case, however, does not foreclose further consideration of the present motion. Penn Tanker Co. of Delaware v. C.H.Z. Rolimpex, Warszawa, 199 F. Supp. 716 (S.D.N.Y. 1961), one of the cases relied upon by counsel for defendants, contains an excellent resumé of the applicable court decisions in this respect and a concise review of the law applicable to the instant motion. The *Penn Tanker* case, far from supporting defendants' position in unequivocal terms, demonstrates that discovery is not inappropriate in every instance, and supports to an extent this Court's conclusion that in some instances it is proper for a court to allow limited discovery in a matter which is subject to arbitration. In the words of Judge Feinberg, a "judicially imposed and controlled discovery as to the merits of a controversy which will be referred to arbitration under 9 U.S.C. § 4 [should not be allowed] except, perhaps, upon a showing of an exceptional

situation." 199 F.Supp. at 718. It is my opinion that on the facts here shown an "exceptional situation" exists.

The vessel SS IONIC COAST is presently docked at the Port of Houston. Its cargo is being unloaded, and the hold or holds in which the steel is stored can be inspected immediately upon the discharge of the cargo. Moreover, the master of the ship is available for the taking of a deposition, and the members of the crew who were actually involved in the loading and unloading both before and after the sea voyage are present. No one apparently knows to what port the vessel is to go next, whether within the continental limits of the United States or elsewhere. The vessel, being a foreign-flag vessel, might not visit a United States port for a long period of time, and possibly never. In other words, an opportunity is now present to obtain the facts. With such a situation at hand, I think the discovery requested should be allowed to proceed.

The search for the facts is the continuing search in every contested matter before the courts. This Court cannot conceive how defendants can be harmed by allowing the depositions to proceed, allowing the inspection of the vessel and its cargo, and allowing the production of the documents requested. On the other hand, to allow all of these matters to proceed would, it seems to this Court, be an aid to the ultimate arbitration proceedings. This decision does not mean that the arbitrators who might be ultimately appointed to determine this matter should or should not consider the results of the discovery here allowed. This decision does mean, however, that potentially valuable information will be available for the arbitrators to consider if they so desire. To deny discovery here could well mean that the information sought would never be available to the arbitrators or, if available, only at great expense.

As to any other proceedings in this Court, it is clear that they are inappropriate under the provisions of the Arbitration Act. Thus, defendants' motions to stay further proceedings in this Court, except as to matters relating to taking of depositions, the inspection of the vessel and its cargo, and the production of documents, will be granted.

True copies of this Order will be sent to counsel of record by the Clerk.